FILED

2014 Oct-14  PM 04:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| APRIL LANE, | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | |
| | } | 5:13-CV-062-WMA |
| CAROLYN W. COLVIN, Acting | } | |
| Commissioner of Social | } | |
| Security, | } | |
| | } | |
| Defendant. | } | |

**MEMORANDUM OPINION**

April Lane brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's final decision denying her applications for supplemental security income and disability insurance benefits. Lane timely pursued and exhausted the administrative remedies available to her before the Social Security Administration. Based on the court's review of the record and the briefs submitted by the parties, the court finds that the Commissioner's decision must be reversed and the action remanded to the Commissioner for an award of benefits.

**STATUTORY AND REGULATORY FRAMEWORK**

To qualify for social security benefits, a non-elderly claimant must, *inter alia*, show that she is disabled. 42 U.S.C. §§ 423(a)(1)(D), 1381a (2012). A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

1

to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2012). To determine if a claimant is disabled, the Social Security Administration employs a five-step process, which is followed at each level of administrative review. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). A conclusive finding may be made at each step; if not, the Commissioner's review continues to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Second, the Commissioner must determine whether the claimant has "a severe medically determinable physical or mental impairment" expected to result in death or to last at least one year. If not, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the Commissioner must determine if any of the claimant's impairments meets or exceeds the requirements of an impairment within the Listing of Impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the Commissioner has not made a conclusive determination after the third step, she must assess the claimant's Residual Functional Capacity (RFC). 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4). The RFC measures the claimant's ability to work in spite of her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Fourth, the Commissioner must determine if the claimant's RFC allows her to perform her past relevant work. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, the Commissioner must determine whether there exist a significant number of jobs in the national economy that the claimant's RFC allows her to perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920 (a)(4)(v), 416.960(c). If a significant number of such jobs exist, the claimant is not disabled; if not, she is disabled. *Id.*

### FACTUAL BACKGROUND

Lane applied for disability insurance benefits and supplemental security income on August 11, 2009. (R. at 128-36). She alleges that she became disabled on July 20, 2009. (R. at 145). Lane testified that she is unable to work primarily due to pain in her right shoulder (resulting from a herniated disc), pain in her hips (resulting from fibromyalgia), and migraine headaches. (R. at 40, 52). According to Lane, the pain in her shoulder and hips often makes performing daily tasks such as cleaning the house and preparing meals impossible, and her frequent migraines, including three to four per month that are uncontrollable, often force her to lie down in a dark room. (R. at 32, 40). Lane testified that her

pain, on a zero to ten scale, is a six or seven daily, and she cannot carry on her daily activities seven to ten days in any given month because of the pain. (R. at 41-42).

After the hearing, the ALJ found that Lane is not disabled. (R. at 11). She began with conceding that Lane has not engaged in substantial gainful activity since the onset date, and that she suffers from the following severe impairments: cervical radiculopathy, fibromyalgia, migraine headaches, anxiety, and depression, though none of the impairments meet or exceed a listing. (R. at 12-13). The ALJ next determined Lane's Residual Functional Capacity, which she listed as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), lifting and carrying up to 20 pounds occasionally and up to 10 pounds frequently. She would require an option to sit and stand during the workday, for 1-2 minutes every hour or so and could stand and walk an hour at a time. She can occasionally push and pull with her upper extremity and can occasionally reach overhead. She should avoid concentrated exposure to cold temperatures, dampness, and vibration. She would be limited to occupations, which do not require climbing of ropes, ladders, or scaffolding. She would not be able to tolerate a lot of stress and may miss one day a month due to her physical or mental problems.

(R. at 13-14). To the extent Lane's testimony contradicted this finding, the ALJ found the testimony not credible. (R. at 14).

Based on the RFC finding, the ALJ found that Lane is capable of performing past relevant work "as a customer service representative, a hotel desk clerk, and a hotel night auditor." (R. at 17). The ALJ consequently found Lane not to be disabled. (R. at

4

18).

## DISCUSSION

### A. Standard of Review

"[R]eview of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Review of the Commissioner's factual findings is highly deferential; "[i]f the Commissioner's decision is supported by substantial evidence [the court] must affirm, even if proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.3d 1233, 1239 (11th Cir. 1983). "A 'substantial evidence' standard, however, does not permit a court to uphold the [Commissioner's] decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

"In contrast to the deferential review accorded to the

5

[Commissioner's] findings of fact, the [Commissioner's] conclusions of law, including applicable review standards, are not presumed valid." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Such conclusions of law are reviewed *de novo. Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). "The [Commissioner's] failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." *Martin*, 894 F.2d at 1529.

## B. The Pain Standard

Lane only challenges one aspect of the ALJ's ruling — whether the ALJ failed to evaluate properly Lane's subjective testimony regarding her symptoms. Eleventh Circuit precedent "requires that an ALJ apply a three part 'pain standard' when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The standard seeks to ensure that objective medical evidence confirms the existence or likelihood of the pain or other subjective

6

symptoms complained of by the plaintiff.

If the plaintiff's testimony satisfies this standard, the ALJ may still discredit the testimony, but she "must articulate explicit and adequate reasons for doing so," *Foote*, 67 F.3d at 1561-62, and "such articulation of reasons by the [Commissioner must] be supported by substantial evidence," *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). "Failure to articulate the reasons for discrediting subjective testimony," or a failure to support those reasons by substantial evidence, "requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225.

In this case, the ALJ found that Lane's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," thus satisfying the requirements of the pain standard. (R. at 14). The ALJ found, however, that Lane's subjective testimony was not credible because it was inconsistent with the ALJ's RFC finding. (R. at 14). Lane contends that the ALJ's refusal to properly credit her testimony is not supported by substantial evidence. Although the ALJ cited two reasons in support of her decision, neither is sufficiently supported, so the Commissioner's decision is due to be reversed.

**1. Lane's Daily Activities**

The ALJ stated in her decision, "The claimant has alleged an inability to work, but has continued to show an ability to perform

7

a wide range of daily activities." (R. at 14). The Commissioner is expressly permitted to consider a claimant's daily activities when evaluating the credibility of the claimant's complaints of subjective symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Evidence of daily activities is a proper basis to discredit a claimant's testimony when her daily activities demonstrate a higher level of functioning than her alleged disabling symptoms would allow. *See, e.g., Leiter v. Comm'r of Soc. Sec. Admin.*, 377 Fed. App'x 944, 948 (11th Cir. 2010) (finding that the claimant's work two days a week as a substitute teacher was not consistent with her assertion that she was unable to perform even simple tasks).

Numerous courts in this circuit, however, have found that "participation in everyday activities of short duration" does not disqualify a claimant from disability and have reversed ALJ decisions relying on such participation to discredit the claimant. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997); *see also Early v. Astrue*, 481 F. Supp. 2d 1233, 1238-39 (N.D. Ala. 2007) (finding that doing house and yard work, caring for pets, grocery shopping, and occasional fishing were not substantial daily activities upon which to discredit the claimant's testimony); *Horton v. Barnhart*, 469 F. Supp. 2d 1041, 1046-47 (N.D. Ala. 2006) (finding that driving, shopping, attending church, cleaning, cooking, reading, watching television, caring for personal needs,

keeping up with friends, and walking for exercise were not substantial activities sufficient to discredit the claimant's testimony); *Stewart v. Astrue*, 551 F. Supp. 2d 1308, 1321 (N.D. Fla. 2008) ("Activities of daily living are often not substantial evidence in the record to discount a claimant's testimony, and the ALJ should proceed with caution in relying upon them to discredit a claimant."). "It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances." *Early*, 481 F. Supp. 2d at 1239.

In her decision, the ALJ cited Lane's listing of daily activities in her August 2009 Adult Function Report to show that Lane's activities undermine her pain testimony. From this report, the ALJ stated that Lane is able to take care of her personal needs, care for her children, prepare meals, do housework and laundry, drive, shop, pay bills, count change, watch television, and cross-stitch. (R. at 14).

A review of the record, however, demonstrates that Lane's daily activities are not as substantial as the ALJ claimed. The ALJ seemed willing to accept Lane's listing of activities but ignored the limits Lane described as to those activities. This was improper. *See Horton*, 469 F. Supp. 2d at 1047 ("The ALJ's selective description of the plaintiff's activities is disingenuous, as he accepts her listing of her activities, but not her limiting

description of them."); *see also Tieniber*, 720 F.2d at 1253 ("A 'substantial evidence' standard, however, does not permit a court to uphold the [Commissioner's] decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ.").

For example, in Lane's Adult Function Report, she stated that she will clean the house "if able"; she receives help from her grandmother and neighbor with taking care of her children and doing housework; she usually only prepares cereal, sandwiches, frozen dinners, or canned food for meals, while cooking a complete meal "once in a blue moon"; and she sometimes cannot go outside or drive on her own. (R. at 162-66). Further, Lane testified that her migraines occasionally prevent her from taking care of her children; she cannot get her children ready for school or drive them once or twice a week because of her pain; and she usually cannot vacuum, sweep, or mop. (R. at 33, 43, 44).

The ALJ, however, did not mention or discuss this evidence. With one exception,[1] she merely cited the activities listed, ignored any conditions or limitations placed on the listings, and found that "[t]he level of activities reported by . . . the claimant . . . [is] inconsistent with disabling limitations." (R.

---

[1]The ALJ did cite Lane's testimony that she was no longer able to go boating, bowling, or riding on all-terrain vehicles (R. at 14), but this does not excuse omission of the other key facts.

at 15). Because of this omission, the ALJ did not properly explain how Lane's activities contradict her testimony concerning her pain and inability to work. Therefore, the court finds that the ALJ's reliance on Lane's daily activities to discredit her subjective testimony is not supported by substantial evidence.

## 2. Support of the Alleged Limitations by Medical Records

The ALJ also discredited Lane's subjective testimony because "medical evidence has not supported the limitations alleged by the claimant." (R. at 15). The ALJ discussed Lane's medical history and symptoms chronologically and determined that, overall, the medical evidence did not support Lane's testimony. For purposes of review, this court will organize and examine the ALJ's findings by the impairment discussed.

### a. Non-Disabling Impairments

First, the ALJ mentioned several different records that relate to impairments other than Lane's herniated disc, fibromyalgia, and migraines. These include (1) a hysterectomy; (2) diverticulosis and colitis causing abdominal pain; (3) an arachnoid cyst; (4) chronic obstructive pulmonary disease; (5) hypertension; and (6) narcolepsy. Lane does not claim that these impairments are disabling (R. at 52-53), so evidence regarding the lack of severity of these conditions does not discredit Lane's testimony regarding the impairments at issue — namely, her herniated disc, fibromyalgia, and migraines.

11

Similarly, the ALJ noted that Lane's testimony was inconsistent in regard to her smoking cessation. At the ALJ hearing on May 24, 2011, Lane testified as follows:

Q: [H]ow much tobacco are you using on a daily basis?

A: Actually I had completely quit, it's been approximately two months ago, when Dr. Neuthy diagnosed me with the COPD, he explained to me, you know, the full details of what was going on. I did smoke a few cigarettes the past couple days because my little boy's been in the hospital.

(R. at 38). The ALJ also pointed out that Lane's treatment records from Central North Alabama Health Services list "smoking" as an assessment during her April 8, 2011, visit (R. at 347), which was less than two months prior to the ALJ hearing, contradicting her testimony. Based on this evidence, the ALJ found that "[h]er inconsistencies limit her credibility." (R. at 17).

While this statement does have some impact on her credibility, this court is unable to find that it, standing alone, rises to the level of substantial evidence upon which to disbelieve her entire pain testimony, for two reasons: (1) this is not a case in which smoking contributed to Lane's allegedly disabling limitations, so it does not represent "a conscious lifestyle choice which is inconsistent with a finding of disability," *Seals v. Barnhart*, 308 F. Supp. 2d 1241, 1248 (N.D. Ala. 2004); and (2) it is possible

that Lane was not being intentionally untruthful — her quoted testimony does not necessarily contradict itself, and she may have simply mistaken the timeframe of the last doctor's visit by a week or so (she also qualified the timeframe with the word "approximately"). If she did indeed quit routinely smoking after discussing the hazards with her doctor, as she testified (R. at 39), this is an excusable error. Thus, while the evidence does not necessarily reflect well on her credibility, it is not substantial evidence sufficient to discredit the entirety of Lane's subjective testimony. *See Bloodsworth*, 703 F.3d at 1239 ("Substantial evidence is . . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").

### b. Herniated Disc

Lane was diagnosed with a herniated disc on February 19, 2009. (R. at 272). The ALJ found Lane's alleged limitations caused by the herniated disc unsupported by medical evidence for three reasons: (1) Lane did not pursue the rehabilitation therapy recommended by her physician in May 2009; (2) she did not see a doctor for her pain at all between July 2009 and August 2010; and (3) she did not report pain due to the herniated disc during her 2011 visits to Central North Alabama Health Services.

All of these reasons involve a failure to seek medical attention, and such failure may be a proper basis to discredit a claimant's subjective testimony, since a person suffering from

disabling symptoms would normally seek regular treatment. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (discrediting claimant's subjective pain testimony because he "often went for months or years between complaining of [his] pain to his physicians"); *Moody v. Astrue*, No. 1:10-cv-397-TFM, 2011 WL 2693387, *8 (M.D. Ala. July 7, 2011) (finding that the claimant's lack of ongoing medical treatment and wide gaps in such treatment made it "reasonable to assume that if the claimant were experiencing physical and/or mental difficulties to a disabling degree, she would have presented to her physicians for ongoing treatment").

The ALJ's cited reasons, however, are not a proper basis to entirely discredit Lane's testimony, because they are not supported by substantial evidence. First, the ALJ noted Lane's failure to pursue the rehabilitation therapy suggested by her physicians at Harris Neurological Associates. (R. at 15). While an unexplained failure to seek treatment could show that Lane's symptoms are not as severe as she alleges, the ALJ failed to note that a different reason for refusing treatment is evident from the medical record. In the same treatment note in which rehabilitation therapy was suggested, the nurse practitioner noted that Lane was unable to attend the therapy because she had no one available to look after her daughter during the hour-long sessions, which were to occur three times a week for four to six weeks. (R. at 266-67). Thus,

14

while a discrediting inference could arise from this type of evidence, the record is clear that no such inference should arise in this case, since Lane declined rehabilitation for a reason entirely separate from the lack of severity of her condition.

Second, the ALJ pointed to a gap in Lane's treatment of her herniated disc, namely that she did not seek any medical treatment for her pain from July 2009 to August 2010. (R. at 16). The ALJ relied heavily on this gap to discredit Lane's testimony as to all of her symptoms, but the ALJ once again ignored Lane's explanation. At the outset of the hearing, the ALJ expressed her concern with the gap in treatment, and Lane testified that Dr. Harris left the area and closed his practice after her last visit. Before leaving, however, he gave her enough prescription refills (a three-months' supply) to last until her visit to Central North Alabama Health Services in August 2010. (R. at 27). There is no documentation in the record for these prescription refills, but they likely occurred around May 2010. This testimony renders the alleged gap in treatment less substantial, but the ALJ did not note the testimony in her decision, even while placing nearly controlling weight on the gap. Just as with the lack of rehabilitation therapy, this unacknowledged explanation for the gap in treatment undercuts the assumption that the alleged failure to seek treatment occurred because Lane's condition does not warrant treatment, so it is not substantial evidence upon which to discredit her testimony.

Finally, the ALJ noted that the 2011 treatment records from Central North Alabama Health Services do not mention back pain or other pain related to Lane's herniated disc. (R. at 16-17). While the statement is true, this is not substantial evidence upon which to disbelieve Lane's testimony, for two reasons. First, while these three particular records do not mention Lane's herniated disc, the record is replete with complaints of pain and treatment for this impairment. In 2009-10, Lane was treated at least seven times for her herniated disc. (R. at 264, 266, 268, 272, 352, 354, 356). Particularly because the last such visit occurred in December 2010, this court cannot allow the controlling weight the ALJ gave to three records that do not mention Lane's herniated disc when the rest of the medical record clearly demonstrates the severity of the impairment. Second, Lane's insured status expired after December 31, 2010, so the visits in 2011 are outside the pertinent time period for evaluating her disability and are irrelevant to the determination. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("Because Moore's last insured date was December 31, 1997, her DIB appeal requires a showing of disability on or before that date."). None of the reasons given by the ALJ to discredit Lane's testimony regarding the subjective symptoms of her herniated disc are supported by substantial evidence.

### c. Fibromyalgia

The ALJ also discredited Lane's subjective testimony regarding

her fibromyalgia symptoms, citing three reasons: (1) Lane did not pursue the rehabilitation therapy recommended by her physicians at Harris Neurological Associates (R. at 15); (2) Lane did not seek any treatment for her pain from July 2009 to August 2010 (R. at 16); and (3) while Lane was "diagnosed with fibromyalgia, . . . records have not supported a level of limitation that significantly impacted her daily activities" (R. at 17). The first two cited reasons are identical to those discussed above, so they are similarly unsupported by substantial evidence and provide no basis to discredit Lane's testimony.

As to the third reason, while the ALJ stated that the medical records do not support a significant limitation based on fibromyalgia, this finding is not supported by substantial evidence. A review of the record reveals extensive complaints of pain and treatment for Lane's fibromyalgia. Beginning with her fibromyalgia diagnosis in February 2009, Lane complained of fibromyalgia pain during at least ten treatment visits, up to the last treatment date contained in the record, on April 8, 2011. (R. at 235, 264, 266, 268, 270, 347, 350, 352, 354, 356). She was consistently prescribed medication to treat her fibromyalgia and resulting pain, including powerful pain medication such as Lortab. (*Id.*). The ALJ cited treatment records from February and July 2009 as evidence that her fibromyalgia is non-disabling. These records indicate that Lane had, respectively, eight and twelve trigger

points of fibromyalgia pain, out of a possible eighteen. (R. at 15). These two records are not enough to provide substantial support for the ALJ's position, because Lane only complains of one trigger point — her hips — as a source of disabling pain. During the July 2009 visit, Lane specifically complained of hip pain (R. at 264), while she complained of muscle aches more generally in February (R. at 270). Therefore, any lack of trigger points is irrelevant, and the ALJ's contention that the medical records do not support significant limitation due to fibromyalgia is unsupported by substantial evidence.

### d. Migraines

Finally, the AlJ discounted Lane's subjective testimony regarding her pain caused by migraine headaches. She gave three reasons for this conclusion: (1) Lane did not take any preventative medication; (2) Lane's headaches improved with treatment and could be controlled with medication; and (3) after Lane reported significant improvement with her migraines in July 2009, no further treatment for her headaches is evident from the record. In support of the first reason, the ALJ stated that Lane "indicated her migraines were triggered by the weather, fluorescent lights, foods, and high pollen days, but she does not take any preventative allergy or other medications." (R. at 17). The ALJ, however, cited no evidence to show that medication would actually help prevent or control Lane's migraines. Rather, the only relevant evidence in the

record is Lane's testimony, in which she stated that her allergies are not a significant cause of the headaches, and the best she can do is to avoid the triggers or take pain medication early on. (R. at 30-32). Even then, Lane claims to have three to four uncontrollable migraines per month. (R. at 32). Because the ALJ seemingly operated on an assumption that preventative allergy medication would contain Lane's migraines without any supporting evidence in the record, it is an improper basis upon which to entirely disregard Lane's testimony.

The ALJ's remaining reasons are, however, more substantial and persuasive. Improvement in a claimant's condition, especially if it leads to a discontinuation of treatment, is a sufficient basis to discredit a claimant's subjective testimony, if the reported improvement contradicts her complaints of pain or other symptoms. *See Green v. Soc. Sec. Admin.*, 223 Fed. App'x 915, 922 (11th Cir. 2007) (finding the ALJ's discrediting of claimant's subjective testimony supported by substantial evidence when the claimant's condition steadily improved, culminating in a doctor's instruction to discontinue the treatment); *Cooper v. Comm'r of Soc. Sec.*, 521 Fed. App'x 803, 807-08 (11th Cir. 2013) (finding the ALJ's discrediting proper when treatment records showed that the claimant's conditions had improved, contradicting the claimant's testimony).

The medical records show that Lane complained of migraine

headaches as early as 2006 and continuing into 2009. (R. at 15).
Records from March and July 2009, however, show marked improvement
in her condition; in February 2009, Lane reported that her
headaches occurred three to four times per week, but this amount
dropped to twice a week in March 2009. (R. at 15). Finally, in July
2009, Lane reported that she had not had a headache in two weeks.
(R. at 15). After this reported improvement, the record reveals no
further treatment for migraines. (R. at 15-16).

From this evidence, a factfinder (the ALJ) could draw
differing conclusions. The ALJ found that the noted improvement in
Lane's migraines, followed by a lack of any subsequent treatment,
undermines her claims of disabling pain from the migraines. The ALJ
reasonably thought that otherwise she would have continued to seek
treatment. (R. at 16-17). Lane, on the other hand, contends that
the migraines persisted and that the ALJ placed inordinate weight
on the July 2009 treatment records, improperly assuming that the
reported improvement continued into perpetuity. (Doc. 9 at 9). This
court need not and will not decide the migraine issue, because the
ALJ's decision, unlike in the other instances discussed above, is
supported by substantial evidence. The ALJ was justified in
discrediting Lane's subjective testimony concerning her migraine
headaches.

## C. Remedy

42 U.S.C. § 405(g) provides that a reviewing district court

"shall have power to enter, upon the pleadings and transcript of the record, a judgment . . . reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." When reversing a decision of the Commissioner the district court may either remand the action to the Commissioner for further proceedings, potentially including a rehearing by the ALJ, or simply remand with the instruction that the Commissioner award benefits to the claimant. While the statute does not provide a standard for courts to employ, the Eleventh Circuit has stated:

> Generally, a reversal with remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards. This court, however, may reverse the judgement of the district court and remand the case for an entry of an order awarding disability benefits where the Secretary has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.

*Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (internal citations omitted).

The Eleventh Circuit has found it proper to reverse an ALJ's decision and remand for an award of benefits when the ALJ improperly applied the pain standard. This is true because the claimant's testimony must be accepted as true and it, when combined with evidence in the record such as the uncontroverted testimony of a Vocational Expert, often conclusively shows that the claimant is disabled. *See, e.g.*, *Hale*, 831 F.3d at 1012 (reversing the ALJ's decision and awarding the claimant benefits because it was undisputed and confirmed by the VE that if the claimant's testimony

was accepted as true, the claimant could perform none of her past jobs and there were no jobs in significant numbers in the national economy that she could perform); *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) ("The Secretary's failure to apply the proper standard requires that Brown's testimony regarding pain be accepted as true. Therefore, we reverse the district court's affirmance of the Secretary's determination that Brown was not totally disabled . . . and remand the case with instructions that it be returned to the Secretary for an award of additional disability benefits.") (internal citations omitted). Further, "'[a]mong the most persuasive arguments supporting the [pain standard] is the need to expedite disability claims,'" *Pollard v. Astrue*, 867 F. Supp. 2d 1225 (N.D. Ala. 2012) (quoting *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1401 (9th Cir. 1988)), so the court should not hesitate to award benefits instead of remanding for further proceedings when the testimony of a VE "avoid[s] the necessity of a remand," *id*.

During the hearing, Lane testified that her daily pain level is at a six or seven on a zero to ten scale, and there are seven to ten days in any given month in which her pain prevents her from carrying out her planned activities, such as getting her children ready, driving them to school, attending doctor's appointments, and attending lawyer's appointments. (R. at 41-42). The Vocational Expert testified that a hypothetical person with the exact RFC the

ALJ found Lane to possess, except that she would miss more than two days of work per month because of her impairments, would be totally unable to hold down a job — all of Lane's previous jobs and "all other jobs" would be eliminated. (R. at 60-61). The VE also testified that a person with a pain level of six to seven on a zero to ten scale who had to lie down during the day during more than normal work breaks would similarly be precluded from all work. (R. at 61-62).

This would be a clear case for a remand with instructions to award Lane benefits, but for the fact that the ALJ fairly discredited Lane's subjective testimony concerning her migraines. But the ALJ's findings as to her herniated disc and fibromyalgia were not supported by substantial evidence. This leaves the court with two out of three. Ignoring Lane's migraine complaints entirely, this court finds "that the cumulative effect of the evidence establishes disability without any doubt," *Davis*, 985 F.2d at 534. Lane testified that she is unable to function because of her pain seven to ten days in a given month (R. at 41), and she suffers from three to four uncontrollable migraines per month (R. at 32). Even assuming *arguendo* that the migraines are Lane's only reason for her inability to function for four days per month, and ignoring those four days for purposes of this review, Lane should still be found disabled. Removing the four days of migraine pain still leaves three to six days per month when Lane is unable to

function, and the VE testified that missing more than two days of work per month would preclude Lane from all work (R. at 60-61). Therefore, even assuming that Lane's testimony regarding her migraines is totally inaccurate, Lane's remaining testimony, accepted as a matter of law as true, firmly establishes that she is disabled, so that the appropriate remedy is to reverse the ALJ's decision and remand for an award of benefits.

## CONCLUSION

The ALJ's listed reasons for discrediting Lane's subjective testimony are largely unsupported by substantial evidence, so Lane's testimony regarding her herniated disc and fibromyalgia pain must be accepted as true. Because this testimony establishes that Lane is disabled without any serious doubt, the ALJ's decision will be reversed and the action will be remanded to the Commissioner with the instruction that the Commissioner award supplemental security income and disability insurance benefits to Lane. A separate order will be entered.

DONE this 14th day of October, 2014.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

24